Lausman v. Drahos.

FRANCIS LAUSMAN, APPELLANT, V. WENZEL DRAHOS
ET AL., APPELLEES.

**Landlord and Tenant.** A tenant, while in possession of certain premises under a lease, purchased the same at judicial sale without surrendering his lease or notifying his landlord, who was absent from the state. *Held*, That the presumption is that the purchase was made to protect his possession and that the landlord might redeem.

THIS was a re-hearing of the case reported in 8 Neb., 457, to which reference may be made for any further statement beyond that contained in the following opinion.

*Uriah Bruner*, for appellant, cited *Mattis v. Robinson*, 1 Neb., 1. *United States v. Duncan*, 4 McLean, 607.

*R. F. Stevenson*, for appellees, cited *Weichselbaum v. Curlett*, 20 Kan., 709. *Bettisin v. Budd*, 17 Ark., 546. *Jackson v. Rowland*, 6 Wend., 666. *Ferguson v. Etter*, 21 Ark., 160. Taylor's Land and Ten., sec. 705.

MAXWELL, CH. J.

This case was before the court in 1879, and is reported in 8 Neb., 457. The plaintiff moves for a re-hearing upon the ground that Sonnenschein was the tenant of the plaintiff at the time he purchased the property in question, and that therefore he could not acquire an adverse title as against his lessor. No stress was laid upon this point in the former argument of the case, nor is the petition framed for the particular purpose of seeking to redeem from Drahos and Sonnenschein, the particular object aimed at being to require Mrs. Parrat to exhaust the other mortgaged

property before selling that purchased by the plaintiff subject to the decree of foreclosure. The petition is very long, with the exhibits covering sixty-four pages. Much of it could have been stricken out on motion, and thereby have made it more symmetrical. But, notwithstanding the want of form in the petition, all the facts which, are well pleaded therein, for the purposes of the action are admitted to be true.

The petition alleges in substance that on or about the first day of October, 1877, the plaintiff rented said lot 6, in block 19, to the defendant Frederick Sonnenschein, who entered into possession of said premises as said tenant, and as such tenant continued in possession of the same until after the sale and confirmation thereof; that the plaintiff was absent from this state from the fifteenth of June, 1876, till about the fifteenth of January, 1878, and had no notice of said sale and confirmation thereof until a long time after the confirmation of the same; that said Drahos and Sonnenschein purchased said lot for the sum of $452, although it was worth the sum of $1200 at that time, and is still of that value; and that they purchased said lot with the intention of defrauding the plaintiff; that they have been and are in possession of said premises, the rental value of which is about $10 per month. There is no prayer in the petition to *redeem* this lot from Drahos and Sonnenschein, the prayer upon that matter being to have their title declared void; but there is a general prayer " for such other relief as equity and the nature of the case may require."

Drahos and Sonnenschein join in a general demurrer to the petition, so that if there is a cause of action stated against either the judgment must be reversed. *Dunn v. Gibson*, 9 Neb., 513.

As a general rule a tenant will not be permitted to

deny the title of his landlord so long as the tenancy exists. But when the landlord's title has been extinguished in an action for rent by the lessor these facts may be shown as a defense. The relation of landlord and tenant can be created only by lease, either in writing or by parol. It is said that "there is a tenure between lessor and lessee for years, to which fealty is incident by theory of law as well as of privity of estate between them." 1 Wash. Real Property, 413. *Thrall v. Omaha Hotel Co.*, 5 Neb., 300. And where the relation of landlord and tenant has been established it attaches to any who take through or under the tenant as assignee.

In *Mattis v. Robinson*, 1 Neb., 3, one Mattis leased certain premises for one year, and after the expiration of the lease, but while holding over and while in possession of the premises acquired under the lease, he purchased a mortgage on the premises for one half of its face value, and commenced an action of foreclosure, thereby attempting to divest the title of his lessors. The court say: "The policy of the law will not allow a tenant to be guilty of a breach of good faith in denying a title, by acknowledging and acting under which he originally obtained and has been permitted to hold possession of the premises. The lessee obtaining possession is estopped from keeping the land in violation of the agreement under which it was acquired. The result of allowing a tenant to deny the title of his landlord is well illustrated in 2 Smith's Leading Cases, p. 657: 'It is well known that a recovery cannot be had in ejectment without proof of title, and that it may be defeated by proving an outstanding title in a third person. For a tenant, therefore, to be permitted to question or contest his landlord's title in an action of ejectment for the land would be to take the estate from the latter and confer it upon the for-

mer whenever there was a defect, either in the title itself or the proof brought forward to sustain it. This would obviously be equally inconsistent with public policy and private faith, and would prevent men from letting their property even when they were unable to use it themselves.' Good faith requires that the tenant shall not avail himself of the advantage given by his possession as against his landlord. Before assailing his landlord's title he must put him in as good position as he was before the tenancy by delivering up to him the possession." This doctrine was reaffirmed in *Thrall v. Omaha Hotel Co.*, 5 Neb., 295.

Judge Story says: " It may be laid down as a general rule that a trustee is bound not to do anything which can place him in a position inconsistent with the interests of his trust, or which may have a tendency to interfere with his duty in discharging it. And this doctrine applies, not only to trustees strictly so called, but to others standing in a like situation, such as assignees and solicitors of a bankrupt estate. * * * It applies in like manner to executors and administrators * *." Story's Equity Juris., sec. 322. " There are many other cases of persons standing in regard to each other in like confidential relations in which similar principles apply. Among these may be enumerated the cases which arise from the relation of landlord and tenant, of partner and partner, principal and surety, and various others, where mutual agencies, rights, and duties are created between the parties by their own voluntary acts, or by operation of law." Id., sec. 323.

To permit a tenant who has obtained possession under a lease to acquire an adverse title to the premises during the existence of the lease, and to set it up against his landlord, without first surrendering the possession thus acquired, would in many cases permit him to di-

vest the title of his landlord. Suppose the title of the landlord is possessory merely, can the tenant be permitted to divest this possessory title while his lease remains in force? We think not. In the case at bar the defendants purchased the premises during the existence of the lease without yielding possession of the premises, and without notice to their lessor. This being the case, it will be presumed that it was for the purpose of protecting the possession of the plaintiff. The petition therefore, upon *that* question, states a cause of action, for which the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.